[No. 15549. Department Two. January 3, 1920.]

J. R. Ross *et al.*, *Respondents*, v. MARY ROSE, *Appellant.*[1]

HIGHWAYS (55, 58) — USE FOR TRAVEL — FRIGHTENED ANIMALS— QUESTION FOR JURY. Whether there was compliance with Rem. Code, § 5562-27, as to the duty of an automobile driver on approaching frightened animals, is a question for the jury, where there was evidence that the auto approached a frightened horse upon a dangerous approach to a bridge, at a high rate of speed and making a great noise, causing the horse to plunge off the embankment.

SAME (58)—CONTRIBUTORY NEGLIGENCE. Whether a horse that became frightened at an automobile was known by defendant to be unsafe to drive, is a question for the jury, where it appeared that he had frequently driven it in automobile traffic and had passed automobiles safely in the same place, although once some months before it had turned around with him.

SAME (59)—INSTRUCTIONS. In an action for injuries sustained through the frightening of plaintiffs' horse in the negligent driving

[1]Reported in 186 Pac. 892.

of an automobile at great speed making a great noise, it is proper to refuse to instruct that plaintiffs' failure to signal defendant, as provided in Rem. Code, § 5562-27, was contributory negligence precluding a recovery, since the signal is called for only when a full stop is required, and the statute made it the positive duty of the. defendant to exercise precaution to prevent frightening the horse.

NEW TRIAL (24)—GROUNDS—WEIGHT OF EVIDENCE. The fact that the trial court may have considered an award inadequate is not ground for granting the defendant a new trial.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered March 21, 1919, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained by the driver of a horse frightened by defendant's automobile. Affirmed.

*Leon B. Kenworthy,* for appellant.

*Will H. Fouts* and *Gose & Crowe,* for respondents.

TOLMAN, J.—This is an action for personal injuries. From a verdict and judgment for $500 in favor of respondents, the case is brought here on appeal. It appears that, on December 8, 1917, respondents were driving one horse, hitched to a single buggy, along the public road on their way from Dayton to their home. As they crossed the bridge over the Touchet river and drove onto the approach or fill on the far side, they saw appellant's automobile rapidly approaching them around a bend in the road, some three hundred or four hundred feet distant. They allege in their complaint, and testify, that the automobile was coming at such a high and excessive rate of speed as to constitute negligent and reckless driving, especially so since they were on the narrow approach to the bridge, not exceeding twenty feet in width, with a sheer drop of some four or five feet on either side, with no railing or barrier to prevent horse and vehicle from going over the edge. Both respondents testified

that the automobile was not seen by them until they had passed off the railed-in bridge onto the unrailed approach; that it was then distant from them about 110 steps, and that it did not stop or slacken in speed until after it had passed them and the accident had occurred; that, about the instant they saw the automobile, the horse they were driving threw up its head, began to shy, and the husband was fully occupied all the time in keeping a firm hold on the reins and trying to control the horse; that the horse and buggy advanced about their length in the time intervening between when they first saw the car and the happening of the accident; that, as the car approached, it made "a terrible racket," and when it was still distant, as she estimated, thirty feet, the wife threw up her hands and cried "whoa," but the car came on with undiminished speed and noise and the horse, still shying, made a lunge, and horse, buggy and occupants went over the edge of the embankment, apparently just as the car dashed by.

Appellant pleaded, in addition to the usual defenses, that the horse driven by respondents was, and was known to them to be, "of a shy, skittish, excitable and unruly nature," and that it was inclined, on the smallest pretext, to bolt, plunge and become unmanageable and uncontrollable.

Errors are assigned upon the refusal to grant a motion for nonsuit made at the proper time; the refusal to grant a motion for judgment *non obstante veredicto,* and a motion for a new trial, and upon the giving and refusing of certain instructions.

From the simple statement which has been made, taken, of course, from respondent's testimony, and disregarding for present purposes the evidence of the defense, it is apparent that there was evidence to go to the jury upon the question of whether or not ap-

pellant was complying with the statute, § 27, ch. 142, Laws of 1915, p. 395 (Rem. Code, § 5562-27), which reads as follows:

"Every person driving or operating a motor vehicle on approaching any vehicle drawn by a horse or horses or any horse upon which any person is riding, shall operate, manage and control such vehicle in such manner as to exercise reasonable precaution to prevent frightening of any such horse or horses and to insure the safety and protection of any person riding or driving the same. If such horse or horses appear frightened, the person in control of said motor vehicle shall reduce the speed thereof, and if requested by the raising of the hand or other signal of the driver of such horse or horses shall bring such motor vehicle to a full stop and shall not proceed further unless such movement be necessary to avoid accident or injury or unless such animal appears to be under the control of its rider or driver."

Was the evidence as to the conduct of respondent of such a nature as would have justified the court in granting one or more of the motions referred to? Respondent Ross testified that he had driven the same horse for four or five years, single and double, going to town frequently and driving where automobile traffic was frequent; that he considered her reasonably safe, though he admitted that this same animal had turned around with him on that same bridge six or eight months before. Mrs. Ross testified that her husband had driven the horse singly on many occasions; that she frequently accompanied her husband when he was so driving; that they had passed automobiles safely on the bridge in question, and that she had never seen her husband have any trouble with the horse when driven singly or otherwise. There might have been some statements of these same witnesses less strong in their own behalf, but that would not justify the court in taking from the jury the question of whether

the horse was known to be unsafe, nor can we say that the minds of reasonable men might not differ as to whether respondent Ross, in view of his knowledge of the horse, did or did not act as a reasonably careful and prudent person would under the circumstances shown.

The errors assigned upon the instructions given and refused relate principally to one question. The court instructed the jury as follows:

"You are instructed that one who goes upon a highway, knowing that the animal he is driving is easily scared or frightened by automobiles, and when so is dangerous and uncontrollable, must exercise such care and caution as persons of ordinary prudence, skill and foresight, would use under the same or similar circumstances to avoid accidents and injuries to himself. And in this case if you find from the evidence that the horse which the plaintiffs were driving was known by them to be likely to become scared or frightened at automobiles, and when so was liable to become dangerous and unsafe, then it was their duty, when they observed or should have observed the approach of defendant's automobile, to exercise such care and caution, as persons of ordinary prudence and foresight would have used under the same or similar circumstances, to avoid injury to themselves, and if you find from the evidence that the plaintiffs did not use such ordinary care, and by reason of their failure to do so, the plaintiff J. R. Ross was injured, then in such case, if you so find, the plaintiffs would be guilty of negligence and cannot recover in this action."

It is conceded that the first part of this instruction is proper, but appellant contends that the latter part should have been made to read substantially as follows:

"Now if you find that the horse of plaintiffs was of such a nature and disposition, and that the plaintiffs knew this, or should have known it, and had good reason to know and believe that their horse would

become frightened upon the approach of defendant's automobile, and they did not, by. the raising of the hand or other signal, warn the defendant to slow down or bring her car to a full stop, you are instructed that the plaintiffs are guilty of negligence, and your verdict shall be for the defendant."

To have given the instruction in the form requested would have been to lose sight of the fact that there was evidence offered from which the jury might find that the driver of the automobile saw, or in the exercise of reasonable caution should have seen, that respondent's horse was frightened, and if the jury should so find, then, under the statute hereinbefore quoted, there was a positive duty upon the part of the driver to reduce his speed in order to avoid an accident, in addition to the positive duty of such driver to use reasonable precaution to prevent the frightening of the horse. The instruction requested also loses sight of the fact that the signal from the driver of the horse, as required by the language of the statute, is for the purpose of requiring a full stop of the automobile only; and lacking the signal entirely, or, if the signal were not given as soon as it might have been, still the duty devolved upon the driver of the automobile to exercise precaution to prevent the frightening of the horse, and to reduce his speed, or take other precautions to prevent an accident when he saw, or should have seen, that the horse was becoming frightened.

We are convinced that there was no error in the instructing of the jury. The fact that the trial court may have considered the award inadequate is not a reason for granting a new trial to the defendant, and there being evidence to sustain the verdict, as we have already seen, the judgment appealed from must be affirmed.

HOLCOMB, C. J., BRIDGES, MOUNT, and FULLERTON, JJ., concur.